**No. 23-60471**

# United States Court of Appeals for the Fifth Circuit

---

NATIONAL ASSOCIATION OF PRIVATE FUND MANAGERS; ALTERNATIVE INVESTMENT MANAGEMENT ASSOCIATION LTD.; AMERICAN INVESTMENT COUNCIL; LOAN SYNDICATIONS AND TRADING ASSOCIATION; MANAGED FUNDS ASSOCIATION; and NATIONAL VENTURE CAPITAL ASSOCIATION,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

---

On Petition for Review of an Order of the
Securities and Exchange Commission

**PETITIONERS' UNOPPOSED MOTION TO EXPEDITE**

STEPHEN J. HAMMER
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-2923
(214) 698-3100

EUGENE SCALIA
  *Counsel of Record*
HELGI C. WALKER
BRIAN A. RICHMAN
MAX E. SCHULMAN
ROBERT A. BATISTA
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500
EScalia@gibsondunn.com

*Counsel for Petitioners*

September 15, 2023

# CERTIFICATE OF INTERESTED PERSONS

No. 23-60471

NATIONAL ASSOCIATION OF PRIVATE FUND MANAGERS; ALTERNATIVE INVESTMENT MANAGEMENT ASSOCIATION LTD.; AMERICAN INVESTMENT COUNCIL; LOAN SYNDICATIONS AND TRADING ASSOCIATION; MANAGED FUNDS ASSOCIATION; and NATIONAL VENTURE CAPITAL ASSOCIATION,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

_____

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that there are no corporations that are either parents of any Petitioner or that own stock in the Petitioners.

**A.    Petitioners**

1.   National Association of Private Fund Managers
2.   Alternative Investment Management Association Ltd.

# CERTIFICATE OF INTERESTED PERSONS
## (continued)

3. American Investment Council
4. Loan Syndications and Trading Association
5. Managed Funds Association
6. National Venture Capital Association
7. Others who are not participants in this matter but may be financially interested in its outcome include members of the National Association of Private Fund Managers, Alternative Investment Management Association Ltd., American Investment Council, Loan Syndications and Trading Association, Managed Funds Association, and National Venture Capital Association.

**B.	Attorneys for Petitioners**

Eugene Scalia
Helgi C. Walker
Brian A. Richman
Max E. Schulman
Robert A. Batista
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Stephen J. Hammer
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923

**C.	Respondent**

1. Securities and Exchange Commission

**D.	Attorneys for Respondent**

Megan Barbero, General Counsel
Michael A. Conley, Solicitor
Jeffrey Berger, Senior Litigation Counsel
Securities and Exchange Commission
100 F. Street, NE
Washington, D.C. 20549-1090

## CERTIFICATE OF INTERESTED PERSONS
### (continued)

Dated: September 15, 2023      Respectfully Submitted,

/s/ *Eugene Scalia*
EUGENE SCALIA
  *Counsel of Record for Petitioners*

# INTRODUCTION

This case—brought by a broad coalition representing venture capital, private equity, credit, and hedge fund advisers—concerns an order of the Securities and Exchange Commission that will fundamentally change the way private funds are regulated in America. Among other things, the order prohibits longstanding, widely used business arrangements between highly sophisticated parties and, by the order's own estimates, imposes on private funds onerous requirements that will cost *billions* of dollars a year.

Having adopted such sweeping changes to an entire sector of the financial services industry, the Commission at least could have set a reasonable schedule for implementation of the order. Unfortunately, it did not. Under the order published in the Federal Register on September 14, 2023, the Commission's edicts will soon take effect; compliance build-out has already started, and the industry is now hurtling toward a multi-billion-dollar-a-year financial cliff. Petitioners respectfully request that this Court set their challenge for expedited consideration.

Counsel for Petitioners have conferred with counsel for the Commission regarding a briefing schedule and are authorized to state that

the Commission does not oppose the request that the Court enter the below schedule agreed upon by the parties. This schedule would allow for resolution of this case by the end of May 2024. Although that timeline would still require Petitioners to make substantial expenditures in preparation for compliance with the challenged regulations, it is sufficient to allow them to avoid wasting even more massive sums before the bulk of the requirements contained in the order take effect in September 2024. The timeline would also provide needed certainty to the private fund industry.

| | |
|---|---|
| October 11, 2023 | Agency record / certified list |
| November 1, 2023 | Petitioners' opening brief |
| November 8, 2023 | Amicus briefs in support of Petitioners |
| December 15, 2023 | Respondent's brief |
| December 22, 2023 | Amicus briefs in support of Respondent |
| January 22, 2024 | Petitioners' reply brief |
| February-March 2024 | Oral argument |
| May 31, 2024 | Requested decision date |

## BACKGROUND

The order at issue in this case is an "ahistorical, unjustified, unlawful, impractical, confusing, and harmful" attempt to regulate private funds, bit.ly/44WDa0J (dissenting statement of Comm'r Peirce), that was adopted by a 3-2 vote of the Commission.

**A.** Private funds are—as the name indicates—private. They are *not* part of the public securities market. They are generally open only to the world's largest, most sophisticated investors—sovereign wealth funds, pension funds, professionally managed university endowments, and the like. By congressional design, private funds have significant latitude to structure their relationships with their investors as they see fit. As Congress has long recognized, because private fund investors are "highly sophisticated" and capable of "evaluat[ing]" risk "on their own behalf," they do not need the Commission to second-guess their investment decisions and prevent them from working with private funds and their advisers to develop and evolve contractual terms that yield important benefits for both parties. S. Rep. No. 104-293, at 10 (1996).

Congress's light-touch approach has served private fund investors enormously well. Private funds are a successful, thriving sector of the economy. They invest in tens or hundreds of thousands of businesses, with tens or hundreds of millions of employees, and have returned, over the years, enormous gains to investors—generally exceeding the returns available from other investment options.

**B.** On February 9, 2022, the Commission nevertheless proposed a series of sweeping regulations that would fundamentally alter the longstanding, widely used business arrangements between private funds and their investors. *See Private Fund Advisers; Documentation of Registered Investment Adviser Compliance Reviews*, 87 Fed. Reg. 16,886 (Mar. 24, 2022).

The Commission's proposal was ill-considered. The Commission's own Inspector General reported that in its rulemakings, the Commission was relying on "detailees" with "little or no experience," rushing through an "aggressive agenda" without adequate "research and analysis." *The Inspector General's Statement on the SEC's Management and Performance Challenges, October 2022*, at 3 (2022). Numerous commenters observed that the proposal exceeded the Commission's statutory authority: Congress never authorized the Commission to regulate relationships between private funds and their investors in this manner, and the Commission's claim to have found such authority in an ancillary statutory provision about retail investors, titled "Other Matters," was not plausible.

Commenters further explained that the Commission's prescriptive regulations were not only unworkable, but also reflected basic misunderstandings of the market the Commission sought to regulate.

**C.** The Commission forged ahead. Without further notice to the public or opportunity to comment on changes that diverged sharply from the Commission's original proposal, the agency issued a final order adopting a sweeping set of regulations and prohibitions. *See Private Fund Advisers; Documentation of Registered Investment Adviser Compliance Reviews*, 88 Fed. Reg. 63,206 (Sept. 14, 2023) ("Final Order"). The Commission announced soon-to-be-effective restrictions—and in many cases, practical prohibitions—on numerous common arrangements, *see id.* at 63,211/3-63,212/1, and costly reporting and audit requirements that are wholly unnecessary, *see id.* at 63,211/2-3. The Final Order was published in the Federal Register on September 14, 2023. *See id.* at 63,206.

The order's costs are enormous. The Commission's own lowball estimates predict that regulated entities will spend *over 3.7 million internal company hours annually* to comply with the new requirements—and that's just employee time. *See* Final Order, 88 Fed. Reg. at 63,330/1-2,

63,336/2-63,337/3, 63,348/3, 63,352/2-3, 63,370/1-63,379/1. The Commission estimates that other expenses will top *$5.4 billion per year*. *See id.* The real costs will be much higher. In recognition of these significant costs, the Office of Information and Regulatory Affairs designated the Final Order a "major rule" under 5 U.S.C. § 804(2). *Id.* at 63,293/1.

The Final Order is already burdening the private fund industry. Compliance build-out has already started, and the uncertainty created by the Final Order has put new business on hold. And other costs are rapidly approaching. Private fund advisers have just 12 months from the order's September 14 publication (18 months for certain smaller advisers) to develop an entirely new program for tracking and disclosing certain expenses and terms, and seeking investor consent. *See* Final Order, 88 Fed. Reg. at 63,291/3-63,292/1. And, within six months of that date, advisers must develop and implement a new quarterly reporting program as well, complete with a full auditing framework. *See id.*; *see also id.* at 63,330/1 n.1366, 63,371/3 (acknowledging that "advisers will likely need to develop, or work with service providers to develop, new systems to collect and prepare the [quarterly] statements"). By the Commission's own estimates, by September 2024, private fund advisers will have expended

over 2.9 million employee hours and nearly $1 billion in compliance costs to meet these and other requirements. *See id.* at 63,370/1-63,379/1.[*] Many of these expenses, which will be much higher than the Commission's understated estimates, will ultimately be borne by the investors in the funds—the very parties the Commission purports, without authority, to protect.

A decision of this Court by the end of May 2024 on the validity of the Commission's effort to reshape the private fund industry, and to intrude into the private relationships between funds and their investors, would potentially allow Petitioners to avoid wasting billions of dollars that could instead be put to productive use investing in American business. Expedited resolution also would provide valuable certainty for Petitioners about the basic regulatory regime governing private funds.

---

[*] These numbers were calculated based on the Final Order's estimates of "initial burden[s]" to come into compliance with certain requirements, prorated to reflect certain transition periods longer than 12 months, together with the estimated "annual burden[s]" for other requirements that will become effective sooner after publication.

## ARGUMENT

This Court "may expedite an appeal" for "good cause." 5th Cir. R. 27.5; *accord* 5th Cir. R. 34.5, 47.7; *see* 28 U.S.C. § 1657(a) (requiring courts to "expedite the consideration of any action … if good cause therefor is shown"). Good cause exists here. Expedited briefing and argument in this important case will allow the Court to reach a final decision in time to prevent or at least mitigate the irreparable harm that the Final Order will inflict on Petitioners' members and other regulated parties, and at least provide certainty on the governing regulatory regime.

The Final Order will impose irreparable harm. As discussed, the Final Order will impose compliance costs that will run into the billions of dollars and millions of hours of employee time. *Supra* pp. 5-7. Because the SEC enjoys sovereign immunity from suits for money damages, private fund advisers cannot recover these compliance costs after they have incurred them. *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). And, as this Court has held many times, "the nonrecoverable costs of complying with a putatively invalid regulation … constitute irreparable harm." *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (collecting cases).

8

These harms are more than enough to warrant expedited consideration. Preventing irreparable harms of this sort justifies the extraordinary measure of a stay or injunction pending appeal. *See Wages & White Lion*, 16 F.4th at 1135; *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("'[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.'"). It *a fortiori* constitutes good cause for expediting briefing and argument. *See, e.g.*, *Chamber of Com. of the U.S. v. SEC*, No. 23-60255, Dkt. 72, at 4 (5th Cir. Aug. 23, 2023) (seeking expedition of challenge to SEC rule to stem "compliance costs running in the millions of dollars and tens of thousands of hours of employee time"); *id.*, Dkt. 86 (5th Cir. Aug. 25, 2023) (granting motion); *Chamber of Com. of the U.S. v. Dep't of Lab.*, No. 17-10238, Dkt. 98, at 7, 13 (5th Cir. May 24, 2017) (seeking expedition to stem the "accumulation of irrecoverable" "compliance costs" from challenged rule by obtaining a ruling at least a month before "the Rule will take full effect"); *id.*, Dkt. 114-1 (5th Cir. May 25, 2017) (granting motion).

Moreover, prompt resolution of the validity of the Commission's unprecedented undertaking to regulate private funds as if they were part of

9

the public securities market—which they are *not*—would advance much-needed certainty and stability in the private fund space by settling the question of the basic regulatory framework and allowing private fund advisers to understand whether they can take on new business. Those values also satisfy the good cause standard.

## CONCLUSION

The Court should expedite consideration of this case and set the following schedule to enable a decision by the end of May 2024:

| | |
|---|---|
| October 11, 2023 | Agency record / certified list |
| November 1, 2023 | Petitioners' opening brief |
| November 8, 2023 | Amicus briefs in support of Petitioners |
| December 15, 2023 | Respondent's brief |
| December 22, 2023 | Amicus briefs in support of Respondent |
| January 22, 2024 | Petitioners' reply brief |
| February-March 2024 | Oral argument |
| May 31, 2024 | Requested decision date |

| | |
|---|---|
| Dated: September 15, 2023 | Respectfully Submitted, |
| | /s/ *Eugene Scalia* |
| STEPHEN J. HAMMER | EUGENE SCALIA |
| GIBSON, DUNN & CRUTCHER LLP | *Counsel of Record* |
| 2001 Ross Avenue, Suite 2100 | HELGI C. WALKER |
| Dallas, TX  75201-2923 | BRIAN A. RICHMAN |
| (214) 698-3100 | MAX E. SCHULMAN |
| | ROBERT A. BATISTA |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1050 Connecticut Avenue, N.W. |
| | Washington, D.C.  20036-5306 |
| | (202) 955-8500 |
| | EScalia@gibsondunn.com |

*Counsel for Petitioners*

## CERTIFICATE OF CONFERENCE

On September 15, 2023, counsel for Petitioners conferred with Jeffrey Berger, counsel for Respondent, who stated that Respondent does not oppose the relief requested in this motion.

Dated: September 15, 2023               Respectfully Submitted,

                                                       /s/ *Eugene Scalia*
                                                    EUGENE SCALIA
                                                      *Counsel of Record for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, I caused the foregoing motion to be electronically filed with the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF system.

Dated:  September 15, 2023    Respectfully Submitted,

 /s/ *Eugene Scalia*
EUGENE SCALIA
 *Counsel of Record for Petitioners*

# CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts exempted under Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 1,752 words.

I certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point New Century Schoolbook LT.

I further certify that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: September 15, 2023        Respectfully Submitted,

                                                           */s/ Eugene Scalia*
                                                           EUGENE SCALIA
                                                           *Counsel of Record for Petitioners*